White v. Hoyt.

---

MATTHEW WHITE, Respondent, *against* JESSE HOYT *et al.* Appellants.

(Decided June 4th, 1877.)

Where barley was left with the plaintiff, a maltster, to be malted and stored for a contract price per bushel for the entire lot, and the person leaving the barley under such contract afterwards took away a portion of the malted barley and paid a portion of the price for malting and storage, and transferred the balance of the malted barley by indorsing over the maltster's receipts therefor to a third person who had notice from the receipts that the charges for malting and storage were as "per agreement," and the balance of the barley malted was delivered by the maltster to the third person, upon his promise to pay "the charges:" *Held,*—that the plaintiff had a general lien on the malted barley for the unpaid balance of the original contract price for storage and malting, and could recover the amount of that lien of the person to whom the balance of malted barley was delivered.

In such a case it is immaterial upon the question of the right to recover such balance of charges, whether or not the plaintiff knew before delivering the balance of the malted barley, that such balance had been transferred to third parties by the person who had left the same to be malted.

APPEAL by the defendant from a judgment of the court, entered upon a verdict in favor of the plaintiff, rendered at a trial before Judge VAN HOESEN and a jury, and from an order denying a motion for a new trial.

The action was brought by White, a maltster, to recover $975 89, a balance of charges for malting barley, for which charges a quantity of the malt belonging to defendants had been held by plaintiff, and which charges it was alleged in the complaint the defendants had promised to pay in consideration of the malt being delivered to them. The complaint admitted that defendants had paid $2,500 subsequent to the delivery of the malt.

The defendants, in their answer, alleged that the only charges on the malt held by plaintiff for defendants amounted to $2,459 79, and that by mistake they had paid plaintiff $40 21 too much. This last sum and the further sum of $115 86, for alleged failure to deliver some seventy-two bushels of malt, defendants counterclaimed of plaintiff. The answer further alleged that the promise made by the defendants to pay charges was a promise to pay the charges for malting the particular barley from which the malt so held for them was obtained. It appeared from the evidence that the malt referred to in the complaint was a part of a lot of 18,949 bushels sent in the form of barley by John Gordon & Son to the plaintiff in October and November, 1872, under an agreement between Gordon & Son and plaintiff that it should be malted by plaintiff at twenty-three cents a bushel, plaintiff making but a single agreement for the malting of the whole lot. It also appeared that the charges for malting this amount (18,949 bushels), at twenty-three cents a bushel, were $4,358 36, and of that amount Gordon & Son paid plaintiff $1,000 on account, leaving a balance of $3,358 36 unpaid. On November 18th, 1872, Gordon & Son, upon advances made them by defendants, transferred a part of the

barley, by indorsing over to them two maltster's receipts signed by plaintiff.

These receipts each contained a clause, that the charges upon the barley, for labor and storage, were as per agreement. The first receipt was dated Oct. 11, 1872, and was for 4,924 8-48 bushels of barley, and the second, dated November 9, 1872, was for 5,410 bushels Western barley. Other consignments of barley, besides the two lots for which the receipts were given, made up the 18,949 bushels sent by Gordon & Son to be malted under their contract with the plaintiffs. The lots not mentioned in the receipts (8,615.12 bushels) were, after being malted, delivered on Gordon's order from December 2, 1872, to April 25, 1873, in all 8,861.32 bushels of malt. Gordon paid $1,000 on account, and in May told the plaintiff, that he had transferred the balance of the malt to defendants, who (he said) would pay the balance of the bill.

When the defendants applied to plaintiff for the delivery of the malt for which they held the receipts, the plaintiff declined to deliver it unless he was paid "the charges for the barley." Upon the defendants replying, " of course we consider ourselves bound for the payment of the charges on this malt," the delivery was made.

*John A. Mapes,* for appellant.

*Frank D. Harmon,* for respondent.

ROBINSON, J.—There is no conflict in the testimony as to the fact proven by the plaintiff, that all the barley received by him from Gordon & Son, to be stored and malted, was under an entire contract made in October, 1872, for the malting of 20,000 bushels of barley at twenty-three cents per bushel, and that under that agreement about 19,000 bushels were delivered and malted, the proper charge for which was $4,358 36, of which Gordon & Son paid but $1000 on account; that the malt came in three different parcels, which, except some 10,335 bushels represented by two receipts of plaintiff, had been delivered Gordon & Son. These receipts

were in no sense "Warehouse receipts," under the General Warehouse Act, as the storage contemplated was for the purpose of converting the barley into malt. In May, 1873, Gordon informed plaintiff he was about to fail, and had transferred the grain to defendants, and that they would pay the balance of his bill. The barley was received by plaintiff in four or five different lots, for two of which, representing some 10,334 bushels of barley, defendants held the plaintiff's receipts, deliverable to the order of and indorsed by Gordon & Son, acknowledging the receipt of such barley on storage "to be manufactured into malt, and the product thereof" delivered to the order of Gordon & Son "on payment of the charges accrued thereon, in accordance with marginal note hereto," which was "storage and labor as per agreement per month." All of the barley (malted) that had been delivered plaintiff under the original agreement had been returned to Gordon & Son, except the quantities represented by these receipts, and they had paid the plaintiff but $1,000 on account.

Under such circumstances the plaintiff had a general lien upon all the barley thus received and malted by him for the amount agreed to be paid him for storage and labor in the process of malting the whole quantity, and for this he should recover unless he has agreed to a severance of his lien and agreed to look to the particular lots represented by the receipts held by defendants only for the amount for which they should alone be chargeable at the price, *pro rata*, per bushel agreed upon for storage and labor in malting the whole quantity.

It cannot be discovered from any evidence offered in the case that any such idea of severance of plaintiff's lien, or the confining of his claim to such lien under the entire contract proved, should be confined to the barley or its malted products represented by the receipts held by the defendants, for any *aliquot* part of the price agreed to be paid for the storing and malting of the whole quantity delivered plaintiff under the original agreement with Gordon & Son, or that any idea of that character was ever suggested by the defendants until after they had obtained possession of all of the

malt. On the contrary, the defendants appear to have acted at least in disregard of any prudential caution (if any of their rights depended upon it) in ascertaining what was the special agreement referred to in the receipts as to the storage, labor, etc., contemplated in the contract for the storage and malting of the barley. They went through the unnecessary formality of procuring a clerk of plaintiff to indorse on these receipts the words "not transferable," under some impression that although the barley was stored to be malted, they were subject to the provisions of the General Warehouse Act. In the latter part of May, or early in June, 1873, on inquiry by an agent sent for that purpose, they were informed that the malt would not be delivered on mere payment of the specific charge for malting the barley called for by the two receipts they held, but for the balance of $3,358 36 due from Gordon & Son. Without further discussion as to the propriety or particulars of this charge, they, on subsequently asking the delivery of the malt represented by exhibit No. 1, wrote, requesting a delivery, saying, "of course we consider ourselves bound for the payment of the charges on the malt." To this plaintiff replied, "I would like to have the storage-house receipt returned, and to know if you guarantee the claim I have against the malt." To this they did not object, but received the delivery of the whole June 28th and 30th, and July 4th. On July 6th, plaintiff again presented his bill for the said balance of $3,358 36, on which defendants paid $2,500 on account, stating they had not had time to examine the account; but on a subsequent occasion they claimed they were liable only for the specific charges of twenty-three cents per bushel for the storage and labor of malting the quantities represented by their receipts.

The claim was untenable. The barley represented by their receipt was delivered plaintiff to be malted under an entire contract with Gordon & Son, and was subject to the lien of plaintiff for what was done in that respect to the entire lot. On taking a transfer from Gordon & Son of the receipt for these two lots or parcels, they were apprised the barley in its storage and manufacture into malt was subject

to a *special agreement*, and whether so apprised or not, they took only such title as Gordon.& Son had, and subject to all liens upon it enforceable as against them. So also before taking possession of the goods they were. apprised of plaintiff's claim of $3,358 36, and without questioning it wrote " they considered themselves bound to pay the charges on the malt." Upon a bill presented therefor, after the delivery, they paid $2,500, and only asked delay to examine it without suggestion or question as to the general claim distinctly presented by plaintiff throughout, and never questioned, in the particular now sought to be asserted, to wit, that the malt delivered them was only subject to a specific charge, and they only responsible on their promise (on which the malt was delivered) to pay a specific charge of twenty-three cents per bushel for storing and malting the amount of barley represented by the receipts which they held, without regard to the claim of plaintiff thereon, for the balance due for malting the entire quantity delivered him by Gordon & Son for that purpose under the original agreement. Plaintiff's right of recovery and the inefficiency of any of defendant's objections appear clear to me. I am, therefore, for affirming the judgment.

CHARLES P. DALY, Ch. J., concurred.

LARREMORE, J., dissented.

Judgment affirmed.*

---

* This decision was affirmed by the Court of Appeals May 21st, 1878.